UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Michael James Taylor, | ) | C/A No. 2:23-cv-04671-RMG-MHC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| United States of America, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff, represented by counsel, brought this action asserting violations of his constitutional rights and various tort claims arising from an alleged wrongful arrest. ECF No. 13.

Before the Court is a Motion to Dismiss filed by Defendant United States of America pursuant to Federal Rule of Civil Procedure 12(b)(1). ECF No. 62. Plaintiff filed a Response in Opposition to the Motion, ECF No. 67, and Defendant replied. ECF No. 70.[1]

This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2), (D.S.C.). As the Motion is dispositive, this Report and Recommendation is entered for review by the District Judge.

For the reasons set forth below, the undersigned recommends that Defendant's Motion, ECF No. 62, be granted.

---

[1] As set forth in the Procedural History subsection of the Background of this Report and Recommendation, the parties also submitted two additional rounds of supplemental briefing. *See* ECF Nos. 81 (Defendant's First Supplemental Brief); 82 (Plaintiff's First Supplemental Brief); 95 (Plaintiff's Second Supplemental Brief); 98 (Defendant's Second Supplemental Brief).

## BACKGROUND

### I.     Facts Giving Rise to this Lawsuit

Accepting the truth of the allegations in Plaintiff's Amended Complaint and viewing all inferences in the light most favorable to Plaintiff, *see E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009), the facts, for purposes of ruling on the Motion, are as follows.

On or about April 23, 2020, a task force of the Drug Enforcement Administration ("DEA") was conducting surveillance, including "tapping" cell phones of suspects, in relation to an investigation of a drug distribution conspiracy in Charleston County, South Carolina. ECF No. 13 at ¶ 6. While monitoring the cell phone of a known suspect, a conversation was recorded between the suspect and an unknown caller (identified in the Amended Complaint as Daniel Frazer). *Id.* at ¶ 7. The cell phone number was never owned or used by Plaintiff. *Id.*

After being identified from the recorded phone call, Frazer was observed arriving in a red Nissan Altima in North Charleston to meet the suspect. *Id.* at ¶ 8. The vehicle was purchased, owned, and used exclusively by Frazer, who neither lives with nor is related to Plaintiff. *Id.* However, the vehicle was registered with Plaintiff's name and address, and Plaintiff alleges, upon information and belief, that Frazer put the registration in Plaintiff's name to secure car insurance. *Id.* Frazer and the known suspect were also observed meeting at a Taco Bell in Charleston, South Carolina. *Id.* at ¶ 9.

After these two brief visual identifications, officers used Plaintiff's South Carolina driver's license photograph—which they obtained using the Altima's license plate and registration numbers—"to mistakenly and negligently and grossly negligently misidentify the Plaintiff as the actual unknown suspect under visual surveillance, Daniel Frazer." *Id.* at ¶ 10. Other than these

2

identifications and the use of Plaintiff's drivers' license photograph, no other investigative methods were used to determine the identity of the real owner and driver of the Altima and the cell phone number used on April 23, 2020. *Id.* Plaintiff and Frazer have different appearances, ages, and addresses.[2] *Id.*

Plaintiff was arrested on or about November 2, 2020, and spent the next twenty-two days in the Charleston County Detention Center. *Id.* at ¶ 11. He was fired from the two jobs he was working. *Id.* The charges were dismissed on or about March 18, 2021. *Id.*

## II.  <u>Procedural History</u>

Plaintiff initially filed this suit against four individual defendants along with the United States of America and the DEA, alleging constitutional claims, as well as tort claims for false arrest/false imprisonment, negligence/gross negligence, slander/defamation and slander/defamation per se, and assault and battery. ECF No. 13 at 2–9. Defendants moved for dismissal of Plaintiff's claims based on lack of subject matter jurisdiction and Plaintiff's failure to state a claim, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF Nos. 21; 22.

In an Order dated November 26, 2024, the Court dismissed Plaintiff's constitutional claims, as well as his claims for false arrest/false imprisonment, slander/defamation and slander/defamation per se, and assault and battery. ECF No. 45. All Defendants other than the United States of America were dismissed. *Id.* Plaintiff's remaining claim is for negligence/gross negligence under the Federal Tort Claims Act ("FTCA"). *See id.*; ECF No. 13.

---

[2] Plaintiff has since raised the issue of racial bias in other filings before this Court. *See, e.g.*, ECF No. 67 at 10 ("Plaintiff is not contending whether [Defendant's] investigative techniques are appropriate or reasonable [but] that Defendant made the decision to not investigate Plaintiff due to *personal racial bias* and obtained a facially invalid warrant lacking probable cause." (emphasis added)). However, his Amended Complaint contains no allegations that Defendant's decisions were based on racial bias or that identify the race of Plaintiff or Frazer. *See generally* ECF No. 13.

The instant Motion was filed on February 13, 2025. ECF No. 62. One week later, on February 20, 2025, Defendant also filed a Motion to Stay Discovery. ECF No. 63. Plaintiff responded in opposition to both Motions, arguing that Defendant filed the Motion to Dismiss as a "stalling tactic to refuse to comply with discovery that addresses the issues Defendant relies on in [its] Motion to Dismiss" and objecting to a stay of discovery unless he was allowed to pursue discovery first. ECF Nos. 67 at 2; 68 at 2.

On March 27, 2025, based on the necessity of some limited discovery materials to demonstrate jurisdiction, as pled by Plaintiff, the undersigned ordered Defendant to respond to four discovery requests pertaining to processes, procedures, or policies as applicable to this case.[3] ECF No. 72. Defendant responded to the requests for production by producing portions of the DEA Agent's Manual. ECF No. 89 at 5–6. Based on this additional production, the parties were allowed to submit supplemental briefing on the dismissal arguments pending before the Court. ECF No. 72; *see also* ECF Nos. 81 (Defendant's First Supplemental Brief); 82 (Plaintiff's First Supplemental Brief).

On April 9, 2025, Plaintiff filed a Motion to Compel, arguing Defendant had withheld relevant and responsive information regarding jurisdictional matters. ECF No. 73 at 1; *see also* ECF Nos. 80 at 1; 82 at 10. The Court held a hearing on May 7, 2025, ECF No. 84, during which Defendant argued it had produced to Plaintiff the only provisions relevant and responsive to the discovery at issue and asserted the remaining Subchapters of the DEA Agent's Manual were not relevant. *See also* ECF No. 89. The parties were directed to confer regarding possible review of

---

[3] Defendant was ordered to respond to two of Plaintiff's requests for production which sought "[a] copy of the law enforcement procedures manual used by the Drug Enforcement Administration" and training materials "relating to the investigation, arrest, and prosecution of alleged drug distribution conspiracies." *See* ECF Nos. 68-2 at 10–11; 72 at 2–3.

the documents that could sufficiently address Defendant's security concerns regarding the public dissemination of the DEA Agent's Manual but allow Plaintiff to fully review the unredacted materials, based on his skepticism that all relevant subsections of the Agent's Manual had been produced. ECF No. 84.

Subsequently, Plaintiff moved for an *in camera* review of the unredacted portions of the DEA Agent's Manual, narrowed at the May 7 hearing to Subchapters 62, 66, and 68. ECF No. 85. The Court granted Plaintiff's motion, ECF No. 86, and, after reviewing the subchapters, subsequently ordered Defendant to produce additional sections deemed relevant to Plaintiff's claim and proportional to the needs of the case. ECF No. 93.

The parties were once again permitted to submit additional briefing based on the further jurisdictional discovery allowed by the Court. *Id.*; *see also* ECF Nos. 95 (Plaintiff's Second Supplemental Brief); 98 (Defendant's Second Supplemental Brief).

The Motion is now ripe for review.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(1) represents a challenge to the court's subject matter jurisdiction. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 507 (2006). A defendant may challenge the district court's subject matter jurisdiction in two ways. *Kerns*, 585 F.3d at 192. First, a defendant may raise a facial challenge, alleging "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Under such a challenge, the court takes the complaint's allegations as true. *Kerns*, 585 F.3d at 192–93 ("[W]hen a defendant asserts that the complaint fails to allege sufficient facts to support subject matter jurisdiction, the trial court must apply a standard patterned on Rule 12(b)(6) and assume

the truthfulness of the facts alleged."). Alternatively, a defendant may raise a factual challenge, asserting that the jurisdictional allegations in the complaint are untrue. *Id.*

"The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1)." *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995); *see also Betz v. St. Joseph's/Candler Health Sys., Inc.*, 630 F. Supp. 3d 734, 745 (D.S.C. 2022) ("Under Rule 12(b)(1), a plaintiff bears the burden of proving the existence of subject matter jurisdiction by a preponderance of the evidence."). "In determining whether jurisdiction exists, the district court regards the pleadings' allegations as mere evidence and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Betz*, 630 F. Supp. 3d at 745 (citing *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)); *see also Williams*, 50 F.3d at 304 ("In ruling on a Rule 12(b)(1) motion, the court may consider exhibits outside the pleadings.").

## DISCUSSION

Defendant moves to dismiss Plaintiff's remaining claim for lack of subject matter jurisdiction, arguing there is no wavier of sovereign immunity under the FTCA.[4] ECF No. 62. Plaintiff argues (1) that Defendant's Motion is barred "based upon the doctrine(s) of collateral estoppel and/or res judicata"; and (2) there is a waiver of sovereign immunity under the FTCA that allows him to bring his claim against Defendant. ECF No. 67 at 7, 12.

### I.     Res Judicata, Collateral Estoppel, and the Federal Rules of Civil Procedure

Plaintiff asserts that Defendant is barred from bringing the Motion based on res judicata, collateral estoppel, and the Federal Rules of Civil Procedure. *Id.* at 12–16. Defendant contends

---

[4] Defendant makes a facial challenge to jurisdiction. ECF No. 62-1 at 4.

neither res judicata nor collateral estoppel is applicable here and that its Motion is not otherwise barred under the Federal Rules. ECF No. 70 at 3. The undersigned agrees with Defendant.

"Under the doctrine of *res judicata*, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (internal quotation marks omitted) (citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)); *see Clement v. Spartanburg Steel Prods., Inc.*, No. 7:22-cv-0173-MGL-KFM, 2022 WL 19266406, at *4 (D.S.C. Dec. 2, 2022), *report and recommendation adopted*, 2023 WL 2655183 (D.S.C. Mar. 27, 2023). For the doctrine of res judicata to be applicable, "there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel*, 369 F.3d at 354–55. "By precluding parties in a subsequent proceeding from raising claims that were or could have been raised in a prior proceeding, res judicata encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Id.* at 354 (internal quotation marks omitted) (citing *Brown v. Felsen*, 442 U.S. 127, 131 (1979)).

Likewise, a party relying on collateral estoppel, or issue preclusion, must establish: (1) that the issue sought to be precluded is identical to one previously litigated; (2) that the issue was actually determined in the prior proceeding; (3) that the issue's determination was a critical and necessary part of the decision in the prior proceeding; (4) that the prior judgment is final and valid; and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum. *Collins v. Pond Creek Mining Co.*, 468 F.3d 213, 217 (4th Cir. 2006).

Plaintiff argues Defendant has already presented, and the Court has already ruled on, the issues in Defendant's Motion. ECF No. 67 at 12. However, none of the rulings at issue constitute a final judgment on the merits, such that neither res judicata nor collateral estoppel is applicable here. *See Pueschel*, 369 F.3d at 354–55; *Collins*, 468 F.3d at 217.

Moreover, Defendant did not raise discretionary immunity under the FTCA as to Plaintiff's negligence/gross negligence claim against the United States of America, such that this issue has not been previously litigated, as required for collateral estoppel to apply. *See Collins*, 468 F.3d at 217. Although Plaintiff contends that the arguments in the Motion are substantially identical to those contained in the previous motion to dismiss ruled on by this Court, ECF No. 67 at 12, they are not. In the previous motion to dismiss, Defendant sought, and was granted, a dismissal of Plaintiff's other tort claims on discretionary immunity grounds under Rule 12(b)(1). *See* ECF Nos. 21-1 at 11–14; 45 at 9–10. However, Defendant did not seek or otherwise argue for dismissal of Plaintiff's negligence claim based on discretionary immunity. Instead, the dismissal argument as to the negligence claim pertained to Plaintiff's failure to exhaust administrative remedies, which is a separate and distinct argument under Rule 12(b)(1). ECF No. 21-1 at 14–15. While the Court denied the previous motion to dismiss Plaintiff's negligence claim, finding Plaintiff had exhausted his administrative remedies, the Court did not address discretionary immunity. ECF No. 45 at 10–13.

Finally, while Defendant did not raise the discretionary immunity argument in its previous dismissal motion, the argument is not barred or waived under the Federal Rules of Civil Procedure. Though some bases for dismissal are waived if not argued in a defendant's first responsive pleading, *see, e.g.*, Fed. R. Civ. P. 12(g)(2), dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) is expressly exempt from that Rule. *See* Fed. R. Civ. P. 12(h)(3). Indeed, a

jurisdictional defect, like the one now raised by Defendant, can be raised at any time. *See Medina v. United States*, 259 F.3d 220, 223–24 (4th Cir. 2001) (noting the court "must be assured that Congress has waived sovereign immunity" before proceeding to the merits of a claim) (citing *Presidential Gardens Assocs. v. United States*, 175 F.3d 132, 140 (2d Cir. 1999) ("[T]he Government's past failure to raise the defense of sovereign immunity in no way prevents this Court from considering the issue now."); *Suarez Corp. Indus. v. McGraw*, 125 F.3d 222, 227 (4th Cir. 1997) ("We believe that, because of its jurisdictional nature, a court ought to consider the issue of Eleventh Amendment immunity at any time, even sua sponte.")).

For the foregoing reasons, Defendant's Motion for lack of subject matter jurisdiction under Rule 12(b)(1) is not barred.

## II.     <u>Sovereign Immunity: Plaintiff's Negligence/Gross Negligence Claim under the FTCA</u>

Plaintiff brings his claim for negligence/gross negligence under the FTCA. *See generally* ECF No. 13. His claim is based on several allegations, including Defendant's alleged failure to properly investigate the identity of its suspect. *Id.* at ¶¶ 24–25. Defendant contends that it is immune from suit and this claim should be dismissed for lack of subject matter jurisdiction. *See* ECF No. 62 at 1. Plaintiff argues that: (1) Defendant's immunity is waived under the law enforcement proviso of the FTCA and (2) the discretionary function exception's immunity does not apply because Defendant failed to follow any policy and was instead motivated by racial animus. ECF No. 67 at 7–11.

The FTCA serves to convey jurisdiction in federal court when the alleged breach of duty is tortious under state law,[5] or when the Government has breached a duty under federal law that is

---

[5] Because the alleged actions in this case occurred in South Carolina, the substantive law of South Carolina applies to the tort claims. *See United States v. Neustadt*, 366 U.S. 696, 706 n.15 (1961).

analogous to a duty recognized by state law. *Goldstar (Pan.) S.A. v. United States*, 967 F.2d 965, 969 (4th Cir. 1992). "The FTCA waives the United States' sovereign immunity for civil suits for money damages 'for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Blanco Ayala v. United States*, 982 F.3d 209, 214 (4th Cir. 2020) (citing 28 U.S.C. § 1346(b)(1)). "Because the default position is that the federal government is immune to suit, any waiver of that immunity must be strictly construed in favor of the sovereign." *Pornomo v. United States*, 814 F.3d 681, 687 (4th Cir. 2016) (cleaned up) (quoting *Welch v. United States*, 409 F.3d 646, 650–51 (4th Cir. 2005)).

The FTCA excepts certain actions from its waiver of sovereign immunity. *See, e.g.*, 28 U.S.C. § 2680; *see also Welch*, 409 F.3d at 651 ("The scope of this waiver is limited by a series of specific exceptions outlined in the Act, each of which is considered jurisdictional."). One such exception provides immunity for certain intentional torts committed by federal employees other than investigative or law enforcement officers, *see* 28 U.S.C. § 2680(h), while another exception provides immunity for the discretionary functions of government employees, *see* 28 U.S.C. § 2680(a). These "exceptions to the FTCA's immunity waiver work to defeat the subject matter jurisdiction of the federal courts." *Blanco Ayala*, 982 F.3d at 214.

### A. Law Enforcement Proviso

First, Plaintiff argues that the United States has waived its immunity under the law enforcement proviso and "[t]he waiver of sovereign immunity of the United States is granted when law enforcement officers are executing a search, seizing evidence, or making an arrest." ECF No. 67 at 7–8 (citing *Millbrook v. United States*, 569 U.S. 50, 53 (2013)). However, the law

enforcement proviso is not applicable to Plaintiff's negligence claim and does not waive Defendant's immunity.

Under the "law enforcement proviso" of section 2680(h), immunity is waived under the FTCA if the claim arises out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution and results from the acts or omissions of investigative or law enforcement officers, which include "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C. § 2680(h); *see Millbrook*, 569 U.S. at 52–53, 57 (holding that the law enforcement proviso's waiver "extends to acts or omissions of law enforcement officers that arise within the scope of their employment, regardless of whether the officers are engaged in investigative or law enforcement activity, or are executing a search, seizing evidence, or making an arrest").

Here, Plaintiff's claim is against the United States for negligence/gross negligence and, thus, not part of the law enforcement proviso—applicable to claims arising out of the six named intentional torts—that waives immunity for certain wrongful conduct of law enforcement officers.

## B.  Discretionary Function Exception

Moreover, notwithstanding that the law enforcement proviso exception does not apply, Defendant argues that its investigation and arrest of Plaintiff are also protected by the discretionary function exception to the FTCA. ECF No. 62-1 at 8. As this Court has found: "[C]onduct that falls under the law enforcement proviso exception but is also discretionary under 28 U.S.C. § 2680(a) will remain immune." ECF No. 45 at 9 (citing *Medina*, 259 F.3d at 225); *see also Martin v. United States*, 145 S. Ct. 1689, 1697–99 (2025) (determining law enforcement proviso did not override immunity provided in discretionary function exception). Nevertheless, Plaintiff disputes the applicability of the discretionary function exception here, arguing that it "does not apply to acts or

omissions of federal employees made upon considerations of personal racial bias." ECF No. 67 at 7.

Section 2680(a) of Title 28 of the United States Code excepts from the FTCA's waiver of immunity those claims that are "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government . . . ." *Id.*

To determine whether this discretionary function exception applies, a court engages in a two-prong analysis, where it "must first ascertain whether the acts in question 'are discretionary in nature,' such that they 'involv[e] an element of judgment or choice.'" *Blanco Ayala*, 982 F.3d at 214 (quoting *United States v. Gaubert*, 499 U.S. 315, 322 (1991)). Thus, "the exception does not apply when the employee is merely following 'a federal statute, regulation, or policy [that] specifically prescribes a course of action.'" *Medina*, 259 F.3d at 226 (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

Second, the conduct in question must also be "based on considerations of public policy." *Berkovitz*, 486 U.S. at 537. This second prong exists "because the very purpose of the discretionary function exception is to prevent judicial 'second-guessing' of administrative decisions grounded in social and political policy." *Medina*, 259 F.3d at 228 (quoting *Gaubert*, 499 U.S. at 323); *see also Carpenter v. Bragg*, No. 8:15-CV-00574-GRA-JDA, 2015 WL 13734632, at *10 (D.S.C. Nov. 30, 2015) ("Rather than requiring a fact-based inquiry into the circumstances surrounding the government actor's exercise of a particular discretionary function, . . . a reviewing court in the usual case [should] look to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." (quoting *Baum v. United States*, 986 F.2d 716, 721 (4th Cir. 1993))),

*report and recommendation adopted*, No. 8:15-CV-574-RMG, 2016 WL 845315 (D.S.C. Mar. 1, 2016); *Tiffany v. United States*, 931 F.2d 271, 276 (4th Cir. 1991) ("It is plain that the discretionary function exception to tort liability serves separation of powers principles by preventing judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. Were it otherwise, the cumulative force of liability would seriously handicap efficient government operations." (internal citations and quotation marks omitted)).

If a government employee has discretion under the first prong, courts are to presume that the employee's acts are grounded in policy in exercising such discretion. *Medina*, 259 F.3d at 228; *Est. of Bernaldes v. United States*, 81 F.3d 428, 429 (4th Cir. 1996) ("[I]f a government employee has discretion under the first *Gaubert* prong, it 'must be presumed' that his acts 'are grounded in policy when exercising that discretion[.]'" (quoting *Gaubert*, 499 U.S. at 324)).

Here, Plaintiff's allegation of negligence/gross negligence specifically indicates that Defendant was negligent, reckless, and grossly negligent:

(a) In failing to exercise due care under the circumstances;

(b) In violating their own policies and procedures;

(c) In failing to adopt and implement rules and polices to protect against void, invalid, and facially deficient warrants;

(d) In failing to train and supervise employees to enter factually accurate information for pre arrest identification or in failing to train and supervise employees regarding pre arrest identification procedure and facially invalid warrants and refusal to serve same;

(e) In failing to adopt and implement rules and policies regarding pre arrest identification procedure and the standards of probabl[e] cause or if such rules and policies exist, failing to enforce compliance with them;

(f) In the grossly negligent misidentification of Daniel Fraser as being Michael James Taylor.

(g) Other acts or omissions as may be revealed throughout discovery.

ECF No. 13 at ¶ 24.

Plaintiff appears to concede that Defendant's conduct is discretionary in his Response to Defendant's Motion to Dismiss, instead arguing that the second prong is not met because Defendant's decisions do not involve considerations of public policy. ECF No. 67 at 11 ("In the matter at hand, the issue is not whether Defendant was acting in a discretionary function, the issue is whether the omission to perform an investigation into Plaintiff is of the type of conduct which the discretionary function exception was designed to shield. Plaintiff contends that Defendant was not acting within the scope of the discretionary function exception because the decision to not investigate the identity of the driver of the Red Nissan was not a decision based on considerations of public policy.").

In any event, as set forth below, the undersigned finds that Plaintiff has alleged discretionary conduct by the United States involving policy considerations and choices. Accordingly, this Court lacks subject matter jurisdiction, and this case should be dismissed. *See Williams*, 50 F.3d at 304–05 ("[I]f the discretionary function exception applies to limit the waiver of sovereign immunity, the jurisdictional grant is not available, and the federal court lacks jurisdiction to hear the case.").

1. <u>Discretionary Conduct</u>

Plaintiff has alleged seven bases for his negligence/gross negligence claim, all of which involve discretionary conduct. *See* ECF No. 13 at ¶ 24.

i. *Failing to Exercise Due Care & Negligent Conduct: ¶ 24(a), (f), (g)*

Plaintiff's allegations that Defendant failed to exercise due care amount to accusations of a negligently conducted investigation.[6] The Court has already determined that investigations and arrests made by the United States or its officers are within the type of conduct protected by the

_____

[6] Without further clarification, subsection (g) appears to be a catchall provision and is included herein.

discretionary function exception. *See* ECF No. 45 at 9–10; *see also Medina*, 259 F.3d at 229 ("[W]e are fully satisfied that the initial decision [by agents of the Immigration and Naturalization Service] to initiate proceedings and arrest [the individual, even though they later dropped deportation proceedings] was the type of agency conduct Congress intended to immunize in the discretionary function exception found in § 2680(a)."); *Mesa v. United States*, 123 F.3d 1435, 1438 (11th Cir. 1997) (determining arrest by DEA agents of incorrect subject with same name as suspect named in warrant was activity covered by discretionary function exception of the FTCA, concluding that "decisions regarding how to locate and identify the subject of an arrest warrant and regarding whether the person apprehended is in fact the person named in the warrant are discretionary in nature and involve an element of judgment or choice").

As the Fourth Circuit has addressed, "the discretionary function exception protects government decisions 'even when made negligently.'"[7] *See Blanco Ayala*, 982 F.3d at 216 (quoting *Wood v. United States*, 845 F.3d 123, 128 (4th Cir. 2017)). Thus, even if the United States was negligent in exercising its discretion in investigating and arresting Plaintiff, it is still excepted from liability under 28 U.S.C. § 2680(a).

Plaintiff contrasts his case to *Medina* and *Blanco Ayala*, arguing "the conduct at issue in this case is not rooted in ideas of discretion that promulgate public, social, or economic policy, but rather a failure to meet the requirements of probable cause and conduct *any* investigation before obtaining an arrest warrant." ECF No. 67 at 14 (emphasis added). However, Plaintiff's contention that no investigation at all was done to identify the driver of the red Nissan conflicts with the allegations in his Amended Complaint, which indicate agents monitored and recorded phone

---

[7] Notably, this exception applies regardless of whether the decision involves an abuse of that discretion. 28 U.S.C. § 2680(a).

conversations, ECF No. 13 at ¶ 7; agents observed Frazer arriving in the Nissan, *id.* at ¶ 8, an officer observed Frazer and a suspect meeting at a Taco Bell, *id.* at ¶ 9, and agents ran information through a database in order to—albeit incorrectly—determine that Plaintiff was the unknown suspect, *id.* at ¶ 10. Though Plaintiff takes issue with the investigation and argues that "[t]he South Carolina drivers license of Plaintiff should have alerted the defendants that the unknown suspect (Daniel Fraser) was not the Plaintiff, due to differences in appearance, age, and address[,]" *see id.*, the steps alleged in Plaintiff's Amended Complaint indicate that indeed an investigation was performed, albeit perhaps poorly.

Moreover, this Court has already reviewed and ruled on this issue, determining that the very same conduct fell "squarely within officers' discretionary decisions to arrest and that those decisions involve public policy considerations[,] . . . Plaintiff's arguments are more properly characterized as negligent performance of a discretionary function[,] . . . [and t]he United States has immunity for claims based on an exercise of discretion[.]" ECF No. 45 at 9–10 (this Court's Order finding that Plaintiff's false arrest and false imprisonment claims against the Government constituted discretionary decisions involving public policy considerations). Plaintiff has not set forth any argument or reason why his negligence claim should be treated any differently from his claims for false arrest and false imprisonment.

### ii.     *Violating Policies and Procedures: ¶ 24(b)*

Plaintiff contends that Defendant violated its own policies and procedures. ECF No. 13 at ¶ 24(b). Defendant moves for dismissal of Plaintiff's claims, arguing that any violation of policies and procedures constitutes a discretionary function protected by the FTCA. ECF Nos. 62-1 at 11–12; 98 at 9–12.

Government conduct does not involve an element of judgment or choice, and thus is not discretionary, if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive. *Gaubert*, 499 U.S. at 322. Thus, for the Court to have jurisdiction over Plaintiff's claims, Plaintiff must point to a policy mandating specific conduct or practice. *See Berkovitz*, 486 U.S. at 544 ("When a suit charges an agency with failing to act in accord with a specific mandatory directive, the discretionary function exception does not apply.").

a.   Plaintiff's Identification of Mandatory Policies or Procedures

Plaintiff's Amended Complaint did not identify any specific policies or procedures.[8] *See generally* ECF No. 13. After the Court granted Plaintiff additional jurisdictional discovery, Plaintiff identified policies or procedures from the DEA Agent's Manual that he contends mandate specific conduct such that the Government's activity in effecting his arrest was not discretionary.[9]

- You *need* to know as much as you can about the targets you are going after.
- Utilize *all* resources at your disposal.
- Find out as much information as you can about a target.
- The learning objective of the surveillance manual lesson outline is to: (1) identify the objectives of the surveillance, and (2) identify the steps *needed* for a DEA agent to conduct surveillance.
- Surveillance is the *only* investigative source available to *identify*- SOS, couriers, recipients of drugs or money, dash houses, co-defendants and or co-conspirators.

---

[8] Plaintiff's reference to Defendant's violation of its "own policies and procedures," ECF No. 13 at ¶ 24(b), is a conclusory allegation that is insufficient to survive a motion to dismiss, even when accepting the facts alleged as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Kerns*, 585 F.3d at 192–93.

[9] This Report and Recommendation includes language from Plaintiff's Second Supplemental Brief that directly quotes and cites the materials produced in discovery. *See* ECF No. 95 at 1–5. Though Plaintiff included other phrases, without citations the undersigned cannot ascertain whether these are direct quotes obtained from discovery or phrases utilized to make Plaintiff's argument. In any case, none of the terms used by Plaintiff to support his argument include the "mandatory" language required to overcome discretionary immunity, as set forth in this section.

- Surveillance is described as the secretive, continuous, and periodic watching of persons, objects, places, and vehicles to obtain information and intelligence concerning the activities and *identities* of individuals.
- Surveillance is intelligence based and *should always* be conducted together with as much intelligence about the targets as possible- addresses, where he frequents, relatives, etc.
- Defendants *should* be kept under surveillance once to process to obtain the warrant . . . has been initiated . . . whenever possible, a written operational plan *will* be prepared.
- Tools to *identify* and assess target *rules* are surveillance operations, toll analysis, undercover operations, defendant/CS interview, other LE agency investigative reporting, pin register, NADDIS file room, fusion center, and wiretap.
- To discover the identity of persons, the *only way* to get more information (if you only have a name) for possible future prosecution would be to *identify* the subject using surveillance techniques.
- Watching a potential target to learn their real identity is essential.
- To obtain evidence/probable cause for warrants, an agent should use the car registration address to see who actually resides at the residence, who owns the residence, vehicles at the residence, and a database check for utility holders.
- For external targeting methodology, an agent should develop effective intelligence about individual targets.
- The investigative tools identified for agents to use when the target has a telephone number are DARTS deconflictions, subscriber and toll data, pen registers, SOD quick checks, internet/open-source checks.
- If you don't know who is carrying a phone- you can watch the person who you suspect is holding that phone and call it and see if he/she answers it, *then you got the identity of your unknown target*.

ECF No. 95 at 1–5 (emphasis in original). Plaintiff also argues that if Defendant makes a decision contrary to what a policy, statute, or regulation mandates, "there is no shelter from liability." *Id.* at 2.

> b.  Defendant's Response to Plaintiff's Identification of Procedures

Defendant argues "[n]owhere in Plaintiff's brief does he provide an example of a mandatory and required course of action that Defendant did not follow [and] Plaintiff's repeated use of the word 'chose' or 'should' in his brief indicates that the agency action was by choice or judgment." ECF No. 98 at 10.

Defendant also produced the declaration of Quinn D. Auten, Acting Unit Chief of the Policy and Procedure Unit, Policy Management Section within the Office of Operations Management of the DEA. *See* ECF No. 98-1.[10] Auten declares that "[t]here are no mandatory federal statutes, regulations, or policies that specify the exact investigative steps the DEA must take to identify and arrest targets." *Id.* at ¶ 7.

### c. Result

The policies cited by Plaintiff as mandating specific conduct still allow for the exercise of discretion in their execution. *See generally* ECF No. 95 (highlighting that Defendant "chose" to do or not do various functions). Other courts have analyzed similar provisions from the DEA Agent's Manual and come to the same conclusion. *See generally Awad v. United States*, No. CV 15-373-MV-CG, 2018 WL 1801905 (D.N.M. Apr. 13, 2018), *report and recommendation adopted*, No. CV 15-373-MV-CG, 2018 WL 4109656 (D.N.M. Aug. 29, 2018), *aff'd*, 807 F. App'x 876 (10th Cir. 2020).

In *Awad*, the court reviewed a similar FTCA negligence claim against the DEA in which the plaintiff was misidentified as the person who sold a controlled substance to an undercover officer, when instead the correct suspect was the plaintiff's brother. *Id.* at *1. In reviewing provisions from the DEA Agent's Manual, the court addressed and rejected plaintiff's claim that DEA agents failed to follow nondiscretionary policies to misidentify plaintiff as the suspect seen in video surveillance. *Id.* at *6. The court found, for example, that "[t]he term 'when practicable,' . . . allows agents to use their discretion to determine whether or not it is practicable to seek an arrest warrant." *Id.* at *7 (citing *Aragon v. United States*, 146 F.3d 819, 824 (10th Cir. 1998) ("'As

---

[10] In determining whether jurisdiction exists, a district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Richmond, Fredericksburg & Potomac R. Co.*, 945 F.2d at 768 (citing *Adams*, 697 F.2d at 1219).

may be practicable' is a prime example of discretionary language.")). The court also noted that even if punishments existed for failing to follow a specific procedure, "that does not necessarily mean the procedure is nondiscretionary for purposes of the discretionary function exception to the FTCA's waiver of sovereign immunity," given that the government's immunity is preserved regardless of an employee's negligence or abuse of discretion. *Id.* Similarly, even if a policy specifies that an agent *should* do a specific task, this language does not imply that the task is mandatory. *See Aragon*, 146 F.3d at 826 (finding manual's use of "should" still involved a discretionary function rather than a specific, mandatory directive). Only if an employee violates a *mandatory* regulation will there be no shelter from liability, based on a lack of choice and a clear action contrary to policy. *See Gaubert*, 499 U.S. at 324.

Here, too, Plaintiff has not pointed to any language *requiring* specific action or any mandatory policy that was violated. *See generally* ECF No. 95. Rather, he has emphasized language in the policy provisions he has cited that suggests a specific course of action. However, even though the provisions Plaintiff has identified might suggest ideal conduct in performing an investigation and arrest, they do not require it. *See Dalehite v. United States*, 346 U.S. 15, 36 (1953) ("Where there is room for policy judgment and decision there is discretion."), *partially overruled on other grounds by Rayonier Inc. v. United States*, 352 U.S. 315 (1957).[11] Moreover, it is even more evident that these are discretionary functions when one reads each provision in its entirety, as many of these provisions specifically include language allowing for the use of discretion, such as "as much as you can" and "whenever possible."

---

[11] *See United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 813 n. 10 (1984) (noting that "fundamental aspects of *Dalehite*, including its construction of § 2680(a), remain undisturbed" after *Rayonier*).

Accordingly, even after the opportunity for jurisdictional discovery, Plaintiff has not pointed to any mandatory policy that Defendant violated in its investigation and arrest. Therefore, he has not shown that the decisions involved in his arrest, which form the basis for his claim, were nondiscretionary decisions exempt from immunity under the FTCA.

### iii.     Failing to Adopt and Implement Rules and Policies: ¶ 24(c), (e)

Plaintiff's Amended Complaint also asserts Defendant was negligent in failing to adopt and implement policies and procedures to protect against deficient warrants and regarding pre-arrest identification procedures.[12] ECF No. 13 at ¶ 24(c), (e). Defendant contends that policy adoption and implementation also involve the permissible exercise of discretion, such that the discretionary function exception applies. ECF No. 62-1 at 11–12.

Plaintiff's Amended Complaint does not identify any statute or regulation mandating the adoption or implementation of the policies Plaintiff contends should have been adopted. Nor has Plaintiff identified any policies or procedures uncovered in jurisdictional discovery that mandate the adoption and implementation of specific policies and procedures, as addressed in the prior subsection. *See generally* ECF No. 95. Accordingly, without mandatory direction, the adoption or implementation of policies within the DEA is a discretionary decision. *See Gaubert*, 499 U.S. at 328 ("We first inquire whether the challenged actions were discretionary, or whether they were instead controlled by mandatory statutes or regulations."); *see also Lins v. United States*, 847 F. App'x 159, 165 (4th Cir. 2021) ("*Gaubert* holds that if a policy, statute, or regulation mandates a course of action, the discretionary function exception does not apply.").

---

[12] Notwithstanding this allegation, Plaintiff's Response to the Motion to Dismiss states he "is not challenging the decision of DEA on whether or not it formulates rules and regulations on how it functions," instead arguing the underlying consideration in the decision not to investigate Plaintiff involved personal bias. *See* ECF No. 67 at 11.

In the absence of any reference to specific, mandatory policies or procedures that Defendant failed to follow in adopting or implementing rules and policies, the undersigned finds that the discretionary function exception bars Plaintiff's claim regarding policy adoption and implementation. *See Berkovitz*, 486 U.S. at 546 (finding the discretionary function exception barred claims challenging formulation of policy regarding the appropriate way to regulate the release of vaccine lot and finding if any policies and programs formulated allowed room for independent policy judgments, actions taken in exercising that discretion are also protected by the discretionary function exception); *see also Varig Airlines*, 467 U.S. at 819–20 (holding "[t]he FAA's implementation of a mechanism for compliance review is plainly discretionary activity of the nature and quality protected by § 2680(a)," as decisions as to the manner of enforcing regulations "require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding").

### iv.     Failing to Train and Supervise: ¶ 24(d)

Plaintiff also alleges that Defendant failed to properly train and supervise employees to enter factually accurate information for pre-arrest identification or properly train employees regarding pre-arrest identification procedures and facially invalid warrants. ECF No. 13 at ¶ 24(d). Though such claims are not categorically barred by the discretionary function exception, much like the other allegations comprising Plaintiff's Amended Complaint, they are only excepted if there is a clear policy that a defendant has violated. *See Lins*, 847 F. App'x at 165–66; *Suter v. United States*, 441 F.3d 306, 312 n.6 (4th Cir. 2006) (concluding claim that Federal Bureau of Investigation ("FBI") negligently hired and supervised agent was barred by the discretionary function exception).

In *Lins*, the operative complaint alleged that the Veterans Affairs ("VA") had a policy "to have 'zero tolerance' for abuse of any Veteran or beneficiary" and that the VA's policy against patient abuse disallowed employees from "enter[ing] into non-professional relationships . . . with Veterans." 847 F. App'x at 165. The policy further provided that when an employee engages in an inappropriate relationship, "the supervisor will assign the alleged abuser to duties that do not involve the delivery of patient care to the alleged victim, and the supervisor will instruct the alleged abuser to avoid all contact with the alleged victim." *Id.* (emphasis omitted). The Fourth Circuit found that the discretionary function exception did not bar the plaintiff's negligent supervision claim where the plaintiff alleged that her therapist violated the VA policy through the therapist's interactions with plaintiff, and the therapist's supervisors were aware of this violation but failed to assign the therapist to duties that did not involve the delivery of patient care to plaintiff or to avoid all contact with plaintiff, in contravention of the VA's *mandatory* policy. *Id.* at 165–66. However, because there were no allegations that the VA had any policies dictating how it hired or retained employees, the Fourth Circuit found that VA hiring and retention decisions were discretionary decisions grounded in public policy, such that the district court did not possess subject matter jurisdiction over the plaintiff's negligent hiring and retention claims.

Here, much like the claims regarding hiring and retention decisions in *Lins*, Plaintiff's Amended Complaint does not identify any government policy that dictates how employees should be trained or supervised that was violated, such that the training and supervision of employees are discretionary decisions grounded in public policy. *See Suter*, 441 F.3d at 312 n.6 ("Courts have repeatedly held that government employers' hiring and supervisory decisions are discretionary functions.").

23

Plaintiff refers to probable cause as "an applicable standard to which law enforcement officers must act when effecting an arrest pursuant to a warrant," and he contends that "[p]robable cause inherently contains a reasonableness standard." ECF No. 67 at 19–20 (citing *United States v. Humphries*, 372 F.3d 653, 657 (4th Cir. 2004)). However, probable cause is not a "mandatory federal statute, regulation, or policy prescribing a specific course of action." *See Baum*, 986 F.2d at 720. Moreover, probable cause "requires 'facts and circumstances *within the officer's knowledge* that are sufficient to warrant a prudent person, or one of reasonable caution, in *believing*, *in the circumstances shown*, that the suspect has committed, is committing, or is about to commit an offense.'" *Humphries*, 372 F.3d at 657 (emphasis added) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). Even this standard allows for discretion in the officer's determination.

Accordingly, without alleging any specific policy governing how the United States should train and supervise employees regarding the entry of information for pre-arrest identification or identifying and refusing to serve facially invalid warrants, Plaintiff's claim that Defendant failed to adequately train or supervise is barred by the discretionary function exception.

In sum, an investigation—even an inadequate one—performed by a federal agency or its officers involves discretionary acts immune from claims brought under the FTCA. *See Blanco Ayala*, 982 F.3d at 216; *Medina*, 259 F.3d at 229. This Court has already found that the decision to initiate legal proceedings and arrest a subject involved discretionary choices that could not be made based merely on following a prescribed statute or course of action. *See* ECF No. 45 at 9–10. Plaintiff has not alleged any facts that would indicate that the discretionary function exception would not apply by pointing to a statute, regulation, or policy mandating particular action with respect to any of the conduct alleged in his Amended Complaint. *See Lins*, 847 F. App'x at 165–66; *Awad*, 2018 WL 1801905, at \*6–7. Plaintiff has not shown that the conduct at issue did not

involve "an element of judgment or choice." *See Pornomo*, 814 F.3d at 687 (quoting *Berkovitz*, 486 U.S. at 536).

    2.  <u>Policy Considerations</u>

The Court could still have subject matter jurisdiction over this case if the decisions alleged were not grounded in public policy considerations. *See id.* ("The second step is to determine whether that judgment 'is of the kind that the discretionary function exception was designed to shield' in that the judgment relates to a governmental action or decision 'based on considerations of public policy.'" (quoting *Berkovitz*, 486 U.S. at 536–37)). In fact, Plaintiff appears to argue in his Response to the Motion to Dismiss that this prong is the only issue in dispute. *See* ECF No. 67 at 11.

To begin, it is presumed that if the government is given discretion under the first prong, the decision is grounded in public policy considerations. *See Medina*, 259 F.3d at 228; *see also Taylor v. United States*, No. 2:24-CV-1440-BHH, 2025 WL 1453961, at *8 (D.S.C. Mar. 21, 2025) ("Ultimately, because the government agents had investigative and prosecutorial discretion under the first *Gaubert* prong, 'it must be presumed that [the government agents'] acts are grounded in policy when exercising that discretion[.]'" (internal quotation marks omitted) (quoting *Bernaldes*, 81 F.3d at 429)). The undersigned has determined that the conduct alleged by Plaintiff is discretionary.

Furthermore, this Court has already determined that the decisions involved in the investigation and arrest of an individual involve public policy considerations. *See* ECF No. 45 at 9; *see also Mesa*, 123 F.3d at 1438 ("[T]he decision regarding how to locate and identify the subject of an arrest warrant is fundamentally rooted in policy considerations."). "[D]iscretionary, policy-based decisions concerning undercover operations are protected from civil liability by the

discretionary function exception, even when those decisions result in harm to innocent third parties. Imposing liability for such decisions 'would seriously handicap' the FBI and other federal law enforcement agencies in carrying out the important duties assigned to them by Congress." *Suter*, 441 F.3d at 312 (quoting *Varig Airlines*, 467 U.S. at 814).

Regardless, Plaintiff has not shown that there were no considerations of public policy involved in Defendant's decisions in this case, citing no law to support his conclusory proposition that because "Defendant made the decision to not investigate Plaintiff due to personal racial bias and obtained a facially invalid warrant lacking probable cause[,]" the decision "was based upon personal bias rather than any consideration of public, social, or economic policy." *See* ECF No. 67 at 10–11; *see also Blanco Ayala*, 982 F.3d at 217 (noting it is plaintiff's burden to establish lack of public policy considerations).

Accepting the conduct alleged in Plaintiff's Amended Complaint as true, it still falls under the immunity provided by the FTCA's discretionary function exception because the choices alleged—even if abused—are grounded in public policy considerations. *See Medina*, 259 F.3d at 229 (decision to initiate proceedings and arrest individual is the type of conduct Congress intended to immunize with § 2680(a)); *Blanco Ayala*, 982 F.3d at 217–18 ("[O]fficers' decisions in investigating and responding to potential violations of immigration law are infused with public policy considerations."). Moreover, notwithstanding there are no allegations of racial bias in the Amended Complaint, even if Plaintiff had made them, without more, the result would be unchanged. *See Taylor*, 2025 WL 1453961, at *8 (determining plaintiff who alleged racially motivated constitutional violations did not allege sufficiently egregious misconduct to take the case "outside the scope of the discretionary function exception"); *see also Pornomo*, 814 F.3d at 687–88 ("[The discretionary function exception] applies 'even if the discretion has been exercised

erroneously' and is deemed to have frustrated the relevant policy purpose." (quoting *Holbrook v. United States*, 673 F.3d 341, 350 (4th Cir. 2012))).

Here, Plaintiff has not alleged egregious misconduct that would take this case outside the scope of the discretionary function exception. *See Taylor*, 2025 WL 1453961, at *8 (citing *Burgess v. Watson*, No. 1:12-CV-8-10, 2014 WL 4540256, at *3 (M.D.N.C. Sept. 11, 2014) ("Courts have overwhelmingly found that claims of negligent investigation or negligent arrest by law enforcement officers are barred by the discretionary function exception."); *Littell v. United States*, 191 F. Supp. 2d 1338, 1342, 1345 (M.D. Fla. 2002) (determining that the discretionary function exception barred the plaintiffs' claims that they were prosecuted for "an illegal, improper, or perverted purpose," specifically, to extort the plaintiffs to provide the government with certain information)).

Thus, the discretionary function exception set forth in section 2680(a) immunizes the United States from suit as to the negligent conduct alleged by Plaintiff. As such, Plaintiff's claim should be dismissed for lack of subject matter jurisdiction.

## <u>CONCLUSION</u>

For the reasons set forth above, it is **RECOMMENDED** that Defendant's Motion to Dismiss, ECF No. 62, be **GRANTED,** and Plaintiff's lawsuit be dismissed.

**IT IS SO RECOMMENDED.**

The parties are referred to the Notice Page attached hereto.

Molly H. Cherry
United States Magistrate Judge

July 10, 2025
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).